Sikora, J.
Upon consideration of all motion and opposition materials; of the massive summary judgment record submitted by the combined parties; and of the oral argument by all parties at the hearing of October 6, 2004; the court rules as follows.
1. It DENIES defendant Employers Insurance of Wausau, A Mutual Company’s motion for summary judgment in toto.
2. It DENIES counterclaim defendant Massachusetts Port Authority’s motion for summary judgment in toto.
REASONING

Introduction: Summary Judgment Standards

Multiple canons of summary judgment adjudication apply to these cross motions for summary judgment. They apply especially to Wausau’s motion for summary judgment against the c. 93A/c. 176D claim by MassPort (Count One) that the insurer has engaged in (a) unfair or deceptive acts or practices prohibited by c. 93A, 2 and 9; and (b) that the insurer has engaged in unfair claim settlement practices forbidden by c. 93A, 9(1) and c. 176D, 3(9). Any discussion of these guidelines for application for summary judgment is conspicuously absent from Wausau’s original memorandum of law and from its reply memorandum of law. MassPort does refer to several of these summary judgment criteria at appropriate points in the course of its memorandum and opposition to Wausau’s motion.
1. The motion judge must examine all factual materials in the light most favorable to the opposing party. See e.g., Corellas v. Viveiros, 410 Mass. 314, 316-17 (1991); Conley v. MBTA, 405 Mass. 168, 173 (1989); Kelley v. Rossi, 395 Mass. 659, 661 (1985).
2. Summary judgment requires both the governing law and the resulting material facts to be settled. Mass.R.Civ.P. 56(c); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); and J.W. Smith & H.B. Zobel, Rules Practice 56.8, 1st paragraph.; and 56.7, 2nd paragraph (1977 ed. & 2002 Supp.).
3. Summary judgment is typically unsuitable for the disposition of claims containing as a material element the mental status of a party. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989) (cases collected). The mental state may include the intent of a party. Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 624 (1990); FDIC v. Porter, 46 Mass.App.Ct. 241, 245 (1999); and Madden v. Estin, 28 Mass.App.Ct 392, 395 (1990). It *33 may include also motivation. Flesner v. Technical Communication Corporation, 410 Mass. 805, 809 (1991). It will include also the knowledge of a party, and specifically of an insurance company charged with bad-faith, unreasonable, or unfair claim handling practices. See O’Leary-Alison v. Metropolitan Property & Casualty Insurance Company, 52 Mass.App.Ct. 214, 217 (2001); Bolden v. O’Connor Cafe of Worcester, Inc., 50 Mass.App.Ct. 56,66-67 (2000); and Williams v. Gulf Insurance Company, 39 Mass.App.Ct. 432, 436 (1995).
4. Summary judgment is unsuitable also for resolution of any claim depending upon an element of credibility. The factfinder must observe and determine the credibility typically from a live witness. See e.g., Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 530-32 (1978); Subin v. Goldsmith, 224 F.2d 753, 757-61 (2d Cir. 1955), cert. denied 350 U.S. 883.
5. A material issue of reasonableness of judgment or reasonableness of reliance upon facts or opinion is also typically inappropriate for resolution by summary judgment. “The application of the reasonable person standard is uniquely within the competence of the jury [or judge as factfinder upon evidence].” DeVaux v. American Home Assurance Co., 387 Mass. 814, 819 (1983). See also Manning v. Nobile, 411 Mass. 382, 388 (1991); Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37(1985); Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984).
6. Unfair conduct within the meaning of c. 93A, 2, 9, or 11 is typically circumstantial rather than categorical. The unfair acts acquire their character from the circumstances of each case. This variable and circumstantial nature of unfair and therefore actionable conduct under c. 93A renders such claims peculiarly difficult for disposition by summary judgment. See e.g., Linkage Corporation v. Trustees of Boston University, 425 Mass. 1, 22-27 (1997); Doliner v. Brown, 21 Mass.App.Ct. 692, 698 (1986); Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979).
7. The greater probability or plausibility of success by a party does not amount to an entitlement to summary judgment foreclosing the determination of an issue without trial. Litigants should not confuse their estimation of probable success with an entitlement to summary judgment. Attorney General v. Bailey, 386 Mass. 367, 371 (1982), cert. denied sub nom. Bailey v. Belloti, 459 U.S. 970 (1982).
8. These guidelines suggest two common sense corollaries.
(a) The more numerous the factors or circumstances necessary for determination of a material question of fact, the less susceptible is that fact to summary judgment disposition.
(B) Factual issues of a technical nature disputed by conflicting expert opinion are typically resistant to summary disposition. The factfinder must entertain and weigh the conflicting expert opinions in order to reach a more reliable determination of a technical factual issue.
I. Wausau’s Motion for Summary Disposition of MassPort’s Claim of c. 93A/ c. 176D Unfair Claims Settlement Practices
MassPort alleges that Wausau committed three unfair claim settlement practices prohibited and actionable under c. 93A, 9(1) and c. 176D, 3(9). The alleged unfair practices are (a) “failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonable clear”; (b) “refusing to pay claims without conducting a reasonable investigation based upon available information”; and (c) “compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured.” These prohibitions appear in subsections (f), (d), and (g) respectively, of c. 176D.
Upon the basis of factual materials accumulated and collected to date, Wausau seeks summary judgment against the 93A/176D specifications upon two grounds. The first is that no genuine issue of material fact exists for trial upon the specifications. The second is that MassPort has failed to furnish a required notice-and-demand letter under the standards of c. 93A, 9(3). I will examine each contention.
A. Existence of Genuine Issues of Material Fact Concerning Unfair Claim Handling Practices by Wausau
1. The following essential points emerge from the chronology of pretrial and post-trial claim handling and negotiations between Wausau and MassPort from the time of the pier fire in October 1993, to the time of final payment of the claim in June 2002. This chronology is not complete or exhaustive. It does capture the essential and undisputed points of that long his-toiy.
2. MassPort’s insurer, Kemper, paid $920,000 for the pier loss. Wausau learned of this payment in approximately late May of 1995. Kemper thereafter forwarded a complete subrogation package to Wau-sau.
(a) On May 18, 1995, Wausau and MassPort participated in a mediation session under the guidance of former Superior Court Justice James Lynch. MassPort had made a demand of $1,629,553 for the pier damage. Wausau had established a reserve of $550,000. Wausau had available to it one expert opinion valuing the claim at $300,000 to $400,000. It had an ultimate expert opinion that the pier had approximately zero fair market value at the time of the fire. Judge Lynch proposed that Wausau offer an amount in the vicinity of the policy limits ($1,000,000). During mediation Wausau offered *34 $200,000. On June 8, 1995, it increased the offer to $250,000.
(b) Shortly afterward, at the trial of June-into-July 1995, the jury returned a verdict upon the pier damage claim in favor of MassPort in the net amount of $681,934.50. To reach the verdict the jury had applied the special purpose property valuation authorized by Trinity Church v. John Hancock Mutual Life Insurance Co., 399 Mass. 43, 48-49 (1987); and had adopted the special purpose valuation of MassPort’s expert ($1,049,039) but allocated comparative negligence of 35 percent to MassPort. Judge Chernoff had given the jury the option of valuation by the traditional method of diminution-of-fair-market-value by reason of the loss, on the one hand; and loss measured by the special purpose value of particular real property, on the other. The jury had found that it could not reach a value under the traditional method; but that it could do so under the special purpose method. See the analysis of the instructions and verdict by the Appeals Court at Massachusetts Port Authority v. Sciaba Construction Corporation, 54 Mass.App.Ct. 509, 512-17 (2002). The trial judge had affirmed the juiy’s selection of methodology in his reasoned denial of Wausau’s (Sciaba’s) motion for j.n.o.v. Id. at 512-13. Wausau had therefore lost the central legal issue of this long and arduous litigation.
(c) From the close of post-trial motions during the second half of 1995 through the first quarter of 1998, settlement activity was slight. In December of 1995, Wausau had set its reserve for the pier damage claim at $521,000. No offers of settlement traveled from Wausau to MassPort during calendar years 1996 and 1997.
(d) In or about May 1998, Wausau assigned the MassPort claim to Ms. Judy Ebersberger of its Home Office Large Case Unit. MassPort was then making a demand for payment in the amount of $925,000.
(e) The parties proceeded to a mediation before former Superior Court Justice Robert Steadman during May of 1998. Ms. Ebersberger then proposed an effective offer of $25,000 to settle the claim. As MassPort points out, that offer amounted to (i) 2.5 percent of the then judgment-with-interest; (ii) approximately 5 percent of Wausau’s reserve on the claim; and (iii) about 10 percent of the lowest settlement value then estimated by Wausau’s own post-trial experts. Mediator Steadman found the position “extraordinary . . . after the trial.” He opined that the Appeals Court was unlikely to alter the amount of the damages verdict. Wausau continued to argue for the fair-market-value-diminution methodology. The May 1998, mediation process produced no result or progress. In June or July Ebersberger increased the settlement offer to $75,000. In August of that year she instructed counsel to pursue the appeal.
(f) During the summer of 1999, the parties engaged in a pre-appeal mediation under the supervision of former District Court Justice Lawrence Shubow. Wausan maintained its offer at $75,000. Judge Shubow expressed the view that the Appeals Court was likely to affirm the trial result.
(g) From August of 1999 to April of 2002, no meaningful exchange of demands and offers occurred between the parties.
(h) On April 16, 2002, the Appeals Court panel issued a decision of affirmance of the trial judgment. During the days thereafter, Wausau counsel advised their client that further appellate review carried little probability of success. Wausau’s chief examiner Brian Lisson instructed counsel to pursue such review.
(i) During May 2002, Wausau officers recognized the unlikelihood of further review and offered settlement at 60 percent of the value of the then existing judgment-with-interest. On June 6, 2002, the Supreme Judicial Court denied further review.
(j) On June 10 and 11, Wausau officers decided to pay the final judgment with interest.
3. The Pretrial Period. At oral argument, present Wausau counsel emphasized that before trial Wausau’s position (the insistence upon a traditional fair-market-diminution-of-value measure of damages) had been respectable and trial-worthy. At least one major factor deprives that contention of the conclusiveness necessary for summary judgment (upon the portion of the present dispute allocable to the pre-jury - trial period of late 1993 through mid-1995); the recommendation of mediator James Lynch that Wausau should make an offer in the vicinity of the policy limit. Other circumstances could cast doubt on the contention, as well. These could include the tenor of Wausau’s internal discussions and reserve figure, and the retrospective light cast by Wausau’s post-trial settlement conduct.
4. Post-trial Claim Management. Wausau’s memo-randa in support of its present motion tends to characterize the long post-trial phase of negotiation, or lack of negotiation, as its adherence to its original conviction in favor of a traditional damages methodology. However the detailed chronology recited above contains abundant indications of issues of irrational or bad-faith behavior. These include (a) the seemingly drastic negotiating regression by Ms. Ebensberger in 1998; (b) the disparity between her offers of $25,000 and $75,000, on the one hand, and the post-trial reserve of $521,000, on the other; (c) Wausau’s imper-viousness to the views of mediator Steadman; (d) Wausau’s continuing immobility against the views of mediator Shubow; and (e) its inactivity from the summer of 1999 to the April 2002, delivery of the Appeals *35 Court decision. A final circumstance generating a genuine issue of material fact about rational and good-faith claim settling would be the May 2002, effort to settle the affirmed trial result at 60 percent of its value.
5. Conclusion. In sum, the course of Wausau’s pier damage claim management, especially as viewed in the light most favorable to MassPort, generates and leaves unanswered multiple questions of its (a) institutional mental state, or motivation, or good faith; (b) the reasonableness or rationality of its judgment; (c) its credibility; and (d) the applicability of c. 93A and c. 176D standards of fairness to the long-running circumstances of the management of the MassPort pier damage claim. Almost all the usual contra-indications are operating against Wausua’s motion.
6. Wausau is moving for summary judgment specifically against the claim of bad-faith claim handling. See its Memorandum of law, p. 1, Introductory Statement first paragraph. It never specifies the counts of MassPort’s Complaint against which it is seeking summary judgment: Count One for c. 93A/c. 176D violations; Count Two for breach of contract; and Count Three for breach of the implied covenant of good faith and fair dealing. Its Memorandum argument appears to proceed exclusively against the c. 93A/c. 176D claim. I have analyzed the motion primarily under criteria defining a c. 93A/c. 176D claim. At the same time, and upon much the same grounds, I deny summary judgment against MassPort’s claim of (a) breach of contract and (b) breach of the implied covenant. Those claims hinge upon the same disputed factual questions of the reasonableness of Wausau’s judgment or assessment of the claim; its good faith; and its credibility. All remain inappropriate for summary disposition.

B. The Adequacy of MassPort’s 93A Demand Letters

1. As an independent ground for entry of summary judgment, Wausau argues, “In the present case MassPort’s purported demand letter does not come close to satisfying the requirements [of a sufficiently specific 93A, 9(3) demand letter].” Memorandum of Law at 26. Wausau is challenging the letter of February 18, 1994, from MassPort attorney Richard Belin to the Wausau office at Burlington, Massachusetts. Amended complaint, Exhibit A. It is undisputed that the letter issued five months after the fire and after prior investigations and communication about the causes and extent of the fire. I have examined the cases cited by Wausau in support of its charge of inadequacy; and those submitted by MassPort in support of the adequacy of the demand letter.
2. A satisfactory letter must reasonably describe the allegedly unfair acts and give the defendant an opportunity to review the applicable law. That information enables the accused party to determine any justification for the requested relief and to make a reasonable offer of settlement. York v. Sullivan, 369 Mass. 175, 162 (1975); Simis v. House of Cabinets, Inc., 53 Mass.App.Ct. 131, 139 (2001). The courts measure the sufficiency of the demand letter with practicality. Realistic communication to the respondent should contain the identity of the claimant, the injury or loss, the essential facts of actionable behavior, and reference to pertinent law. Severable flaws within the letter do not invalidate it. See Leardi v. Brown, 394 Mass. 151, 165-66 (1985). In addition, the courts will read and interpret the letter in light of any prior communication between the parties and in light of any existing knowledge of the respondent. See Simis, 53 Mass.App.Ct. at 140. (the charged respondent already had better knowledge of the pertinent facts than the claimant). See especially, Williams v. Gulf Insurance. Co., 39 Mass.App.Ct. 432, 436 (1995) (defendant insurance company was already aware of the allegedly unfair settlement practices imputed to it by the demand letter).
3. The February 18, 1994, letter identifies the time and place of the fire, Wausau’s insured, the pier project during which the fire occurred, and MassPort’s status as a named co-insured party under the Wausau policy. The letter then itemizes 12 elements of damages in approximate dollar amounts totaling $1,476,250. Two of those itemized elements were (a) “platform reconstruction, after insurance reimbursement$300,000"; and (b) ”SEA: additional costs for design and construction administration services related to the platform and seawall reconstruction contracts$300,000."
4. Reasonably viewed, the letter was calling upon Wausau to make good upon the itemized estimated losses. Wausau’s attack upon the letter appears to be thoroughly specious. Memorandum at p. 26. The insurer argues not only that the demand letter “does not come close” to satisfying the requirements of the statute. It contends also that the letter “doesn’t even include a claim for the damage to the pierthe central issue in the underlying litigation ... It was not until May 12, 1995 that MassPort included a demand figure for the replacement of the pier.” At least two elements of the twelve-point itemization relate to the pier: platform reconstruction priced at $300,000; and “additional costs for design and administration services related to the platform and seawall reconstruction contracts$300,000.” In light of the prior communication and knowledge between the parties, and the itemization of the letter, Wausau’s present contention appears as an exercise in disingenuous flyspecking.
5. The subsequent revised and updated 93A demand letters from MassPort to Wausau came in May of 1995, after the first mediation effort by former Justice Lynch. The second came in May of 1998 after the second mediation conducted by former Justice Steadman. Each letter built cumulatively upon the earlier one and upon voluminous subsequent dealings *36 and communications. None of the 93A demand letters was deficient. They provide no ground for summary judgment against the present action.

II. MassPort’s Motion for Summary Judgment Against Wausau’s Counterclaim of 93A Unfair or Deceptive Use of Litigation

1. MassPort contends that Wausau’s 93A counterclaim against it should not survive as a matter of law. Wausau is alleging that MassPort has brought its original 93A action with bad-faith motivation to coerce a settlement of its pier damage claim at a higher and undeserved level of compensation. MassPort argues that its 93A consumer action does not qualify as an act or practice in “trade or commerce” within the meaning of c. 93A, 2. It emphasizes that litigation, by itself, cannot comprise trade or commerce. Memorandum of Law at p. 29.
2. After examination of the precedents cited by all parties, I find the question to be unsettled as a matter of law and therefore unsuitable by disposition for summary judgment. Certain 93A precedents do establish that litigation can serve as an instrument of an unfair or deceptive act or practice within the meaning of the statute. See, e.g., Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 41-42 (1st Cir. 2000), cert. den., 531 U.S. 1146 (the use of bad-faith defenses and other litigation tactics can constitute 93A misconduct). The intended flexible and circumstantial application of the concepts of unfairness and deception and of trade or commerce would militate against any categorical exclusion of litigation activity as prohibited conduct.
3. The early and basic definition of “unfair” acts or practices sets several tests: (a) whether the conduct lies within the penumbra of common-law, statutory, or other established concepts of unfairness; (b) whether the conduct is immoral, unethical, oppressive, or unscrupulous; and (c) whether it causes substantial injury to consumers or competitors or other business entities. Heller Financial v. Insurance Company of North America 410 Mass. 400, 408 (1991); PMP Associates, Inc. v. Globe Newspaper, Co., 366 Mass. 593, 596 (1975); Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). The claim here of bad-faith, extortionate litigation has the character of the torts of (a) abuse of process and/or (b) malicious prosecution of a civil action. Consequently, at least under general criteria, the court cannot summarily dismiss the claim as a matter of law.
4. In addition, coercive or extortionate conduct is one of the subcategories of recognized 93A unfairness under a consistent line of cases. See especially, Massachusetts Employers Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995); Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1993); The Community Builders, Inc. v. Indian Associates Motorcycle Associates, Inc., 44 Mass.App.Ct. 537, 557-59 (1998); Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992).
5. A final practical consideration deserves mention. The decisionmaker best situated to determine whether, as a matter of fact and as a matter of law, the Wausau policy counterclaim constitutes an unfair or deceptive practice in trade or commerce will be the trial judge. He or she will be able to make, with exhaustive knowledge at that point, findings and rulings with the full benefit of the experience of a substantial trial. That determination as a matter of both law and fact (the relationship between the two determinations is reciprocal) will be ripe at that time.
6. If MassPort is pursuing dismissal or summary judgment of the Wausau counterclaim upon the Anti-SLAPP grounds at this time, I deny that motion or proposal. Judge Connolly’s ruling upon it in October of 1993 reserved it for the triaijudge. Again, that judge will be most knowledgeable and best situated to render a decision upon the good faith and validity of the Wausau counterclaim. In addition, once Judge Connolly made that ruling, the parties lost the option to submit it effectively for another ruling to another judge. At the oral argument of the summary judgment motions on October 6, 2004, the parties indicated that Wausau’s motion for leave to amend the existing counterclaim so as to add factual allegations (but not new legal theories) was unopposed. Upon that understanding, I allowed the motion for leave to amend the counterclaim by additional factual allegations. See the endorsement dated October 7, 2004, upon the face of the motion to amend (docket paper 44). The allowance did not reopen the Anti-SLAPP motion for reconsideration.
7. Upon this subject of the good faith and reasonable grounds for the claims in this litigation, especially Wausau’s present counterclaim challenging the motivation and reasonableness of MassPort’s action, the most closely fitting and appropriate remedy may be available in G.L.c. 231, 6F. As a practical matter that remedy would appear to accomplish the purposes of multiple alternative claims (including 93A; anti-SLAPP; and common-law abuse of process and/or malicious prosecution of a civil action) at a time and in circumstances in which the trial judge will have a full knowledge of the entire litigation.

CONCLUSION

For these reasons, I have DENIED the motion for summary judgment submitted by Wausau; and the motion for summary judgment submitted by MassP-ort.
At first view, these motions and especially the motion by Wausau appeared massively wasteful of the resources of the parties and of the Superior Court. In retrospect the first view turns out to be entirely correct. The motions, and especially Wausau’s motion, generated a summary judgment record of more than *37 2,000 pages of material and effectively delayed trial by six to twelve months.
Wausau’s arguments, in particular, showed little awareness of the specific standards for summary judgment and little sense of its practical application. By almost all established guidelines of summary judgment adjudication, the motions had little or no realistic chance of success. Whether the cause of the motions was litigation tunnel vision, client insistence, tactical retaliation, or intentional delay, the result has been to protract and to postpone the finish of this long and bitter case by six to twelve months and to raise the stakes of the potential 93A assessment of fees and costs by still another caliber.
A separate procedural order will enter to govern the final steps of trial preparation.